J. Justin May, ISB: 5818
Chad R. Moody, ISB: 9946
ANGSTMAN JOHNSON
199 N. Capitol Blvd., Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: jjm@angstman.com
        chad@angstman.com

Attorneys for Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 19-40481-JDP |
| RYAN HINTON, INC. | Chapter 11 |
| Debtor. | |

## MOTION TO REJECT EXECUTORY CONTRACT OR UNEXPIRED LEASE
### (PACCAR – TRUCK 52)

> **Notice of Motion to Reject Executory Contract or Unexpired Lease
> and Opportunity to Object and for a Hearing**
>
> No Objection. The Court may consider this request for an order without further notice or
> hearing unless a party in interest files an objection within 21 days of the date of this notice.
> If an objection is not filed within the time permitted, the Court may consider that there is no
> opposition to the granting of the requested relief and may grant the relief without further
> notice or hearing.
>
> Objection.  Any objection shall set out the legal and/or factual basis for the objection. A copy
> of the objection shall be served on the movant.
>
> Hearing on Objection. The objecting party shall also contact the court's calendar clerk to
> schedule a hearing on the objection and file a separate notice of hearing.

The Debtor in Possession, Ryan Hinton, Inc., by and through its counsel of record, ANGSTMAN JOHNSON, hereby moves the Court for an order approving rejection of an unexpired Equipment Lease Agreement, Account ending in last 4 digits 1682 (the "Lease") with PACCAR Financial Corp. ("PACCAR"), regarding a truck which Debtor refers to as "Truck 52", under 11 U.S.C. § 365(a) and Rule 6006 of the Federal Rules of Bankruptcy Procedure and Rule 9014 of the Federal Rules of Bankruptcy Procedure. The Lease Agreement between the parties is attached hereto as Exhibit "A."

Fields Trucking LLC and PACCAR entered into the Lease on April 8, 2016, for a term of 60 months.  On February 2, 2018, prior to Debtor's bankruptcy, PACCAR approved the request for a transfer of the equity in the Leased equipment going from Fields Trucking LLC to Ryan Hinton, Inc.  pursuant to a Lease Transfer of Interest agreement.  PACCAR calculated the cure amount for unpaid lease payments, late charges and attorney fees as of 7/21/2019 to be $8,282.94 ("Cure Amount").  The parties reached an agreement that Debtor in Possession shall pay the Cure Amount to PACCAR as follows: Upon assuming the Lease, Debtor will make monthly payments of the lease payments with partial arrearages in the total amount of $3,631,40 commencing 8/8/2019 for the next 6 months. Debtor will then resume the monthly payments of $2,250.90 for the remainder of the term.

Based on the parties' agreement, on July 22, 2019 Debtor filed a *Motion to Assume Executory Contract or Unexpired Lease (Paccar – Truck 52)* [Docket No. 68].  The Court issued an Order on August 20, 2019 granting Debtor's Motion to Assume the Paccar Lease [Docket No. 103.].

Debtor now wishes to reject the unexpired lease and deliver back to Paccar the following piece of equipment that is the subject of the Lease:

1. Truck 52: 2016 Kenworth W900 Studio, VIN 1XKWD49X8GJ103312.

The Lease is an unexpired executory contract. Debtor believes it would be adverse to creditors should Debtor be forced to continue payments on the monthly rental amount and post-petition cure payments, with interest. Debtor has been re-evaluating its truck, trailer, and equipment needs and has been re-focusing its business on the brokerage operation. Debtor has been down-sizing its trucking operation. Debtor has determined that the equipment subject to the Lease is not necessary for current ongoing operations. Debtor believes the payments to cure the arrearages will be more burdensome on its operations and the bankruptcy estate than the payments on amounts owed, if any, after the creditor takes steps to mitigate its damages. In the best business judgment of Debtor, rejection of the contract would benefit general unsecured creditors.

This Court has jurisdiction over this request pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding in accordance with 28 U.S.C. §157(b)(2). 11 U.S.C. §365(a) provides, "The Trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." In determining whether to approve a Debtor's decision to reject an unexpired lease under §365, courts generally apply the so-called "business judgment rule." This standard has long been applied to the proposed assumption or rejection of contracts and leases in the bankruptcy court. "[T]he question whether a lease should be rejected and, if not, on what terms it should be assumed is one of business judgment." *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul and Pacific Railroad*, 318 U.S. 523, 550 (1943); *See, e.g., In re Huang*, 23 B.R. 798, 800 (9th Cir. BAP, 1982).

WHEREFORE, Debtor in Possession moves this Court for an order authorizing the Debtor to reject the attached Lease Agreement for Truck 52 with Paccar.

DATED this 7th day of January, 2020.

/s/ Chad R. Moody

CHAD R. MOODY
Attorney for Debtor

MOTION TO REJECT EXECUTORY CONTRACT OR UNEXPIRED LEASE (PACCAR – TRUCK 52) – PAGE 4
Matter: 13044-004

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of January, 2020, I filed the foregoing MOTION TO REJECT EXECUTORY CONTRACT OR UNEXPIRED LEASE (PACCAR – TRUCK 52) electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

- Megan M Adeyemo    madeyemo@gordonrees.com, asoto@grsm.com
- Laura E Burri    lburri@morrowfischer.com, klee@morrowfischer.com
- Matthew Todd Christensen    mtc@angstman.com, mtcecf@gmail.com;govai@angstman.com;megan@angstman.com;abbie@angstman.com;ecf@angstman.com;atty_christensen@bluestylus.com;christensenmr81164@notify.bestcase.com
- Amber Nicole Dina    amberdina@givenspursley.com, litigation@givenspursley.com
- Kimbell D Gourley    kgourley@idalaw.com, swibright@idalaw.com
- Shannon Graham    smg@kellylawidaho.com, tls@kellylawidaho.com
- R Ron Kerl    Ron@cooper-larsen.com, kelli@cooper-larsen.com,bobbi@cooper-larsen.com
- Peter J Kuhn    peter.j.kuhn@usdoj.gov
- David Henry Leigh    dleigh@rqn.com, swilliams@rqn.com;docket@rqn.com
- Jed W Manwaring    jmanwaring@evanskeane.com, jgeier@evanskeane.com
- Jed W. Manwaring    jmanwaring@evanskeane.com, valerie@evanskeane.com
- James C Meservy    jcmeservy@wmlattys.com, dlpeterson@wmlattys.com;lmcarpenter@wmlattys.com;jmbos@wmlattys.com
- Chad Moody    chad@angstman.com, govai@angstman.com;megan@angstman.com;caroline@angstman.com;ecf@angstman.com
- Jason Ronald Naess    jason@pmt.org
- David Wayne Newman    ustp.region18.bs.ecf@usdoj.gov
- John C Peterson    johncpeterson@cableone.net
- Sheila Rae Schwager    sschwager@hawleytroxell.com, dsorg@hawleytroxell.com
- Thomas Daniel Smith    tsmith8206@cableone.net
- US Trustee    ustp.region18.bs.ecf@usdoj.gov
- Julie Varin    jvarin@grsm.com, tduff@grsm.com
- Jeremy Vaughn    sks&t@idaho-law.com
- Brent Russel Wilson    bwilson@hawleytroxell.com, dsorg@hawleytroxell.com

Any others as listed on the Court's ECF Notice.

AND I FURTHER CERTIFY THAT on this date I served the following non-CM/ECF Registered Participants via US First Class Mail, postage prepaid, addressed as follows:

PACCAR Financial Corp.
Attn: Linda Markle
Bankruptcy Specialist
P.O. Box 1518
Bellevue, WA 98009
and by email to: linda.markle@paccar.com

U.S. Trustee
Washington Group Central Plaza
720 Park Blvd., Ste. 220
Boise, ID 83712-7785

**20 or more Largest Unsecured Creditors (see attached list)**

Mark A Brady
Cooper Norman
POB 5399
Twin Falls, ID 83303-5399


/s/  Chad R. Moody
Chad R. Moody

B & B Hay
158 Cypress Way
Twin Falls, ID 83301

Bailey Farms International
PO Box 694
Ephraim, UT 84627

Denney Company, Chtd.
1096 N Eastland Drive
Suite 200
Twin Falls, ID 83301

Dry Creek Farms
78 Dry Creek Road
Carey, ID 83320

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

~~Jack Verbree Dairies~~
~~1574 E 2900 S~~
~~Wendell, ID 83355~~
**(RETURNED MAIL)**

Jackson Group Paclease
PO Box 27634
Salt Lake City, UT 84127

Jim Cenarrusa
PO Box 65
Carey, ID 83320

Kabbage, Inc.
925B Peachtree Street NE
Suite 1688
Atlanta, GA 30309

Les Schwab
421 Blue Lakes Blvd N
Twin Falls, ID 83301

National Funding
9820 Towne Centre Drive
San Diego, CA 92121

Nedrow Brothers
1401 N 3125 E
Ashton, ID 83420

Pali Farm LLC
8235 North 4600 West
Elwood, UT 84337

Pasco Farming, Inc.
590 West 900 North
Paul, ID 83347

Phil Yost
1780 Rich Road
Grace, ID 83241

Simpson Brothers
Box 208
Carey, ID 83320

Sunrise Foods International
306 Queen Street #200
Saskatoon, SK S7K 0M2

Trail Ranches Inc.
5308 E Trail Road
King Hill, ID 83633

US Dept of Transportation
Golden Hills Office Centre
12600 W Colfax Ave Ste B-300
Lakewood, CO 80215

WCF Insurance
100 W Towne Ridge Pkwy
Sandy, UT 84070

BMO Transportation Finance
300 E John Carpenter Freeway
Suite 500
Irving, TX 75062

Caterpillar Financial Services
2120 West End Ave
Nashville, TN 37203-0986

Continental Bank
15 W South Temple Ste 300
Salt Lake City, UT 84101

Corporation Service Center
801 Adlai Stevenson Dr.
Springfield, IL 62703

Deere Credit, Inc.
6400 NW 86th Street
Johnston, IA 50131

DL Evans Bank
906 Blue Lakes Blvd N.
Twin Falls, ID 83301

DL Evans Bank
PO Box 1188
Burley, ID 83318-0826

Engs Commercial Finance
1 Pierce Place
Suite 1100 West
Itasca, IL 60143

~~Engs Commercial Finance~~
~~2441 Warrenville Road Ste 310~~
~~Lisle, IL 60532~~
**(RETURNED MAIL)**

Fields Trucking, LLC
1252 Inca Drive
Twin Falls, ID 83301

First Federal Savings Bank
PO Box 2906
Twin Falls, ID 83301

Hitachi Capital America Corp
800 Connecticut Ave
4th Floor
Norwalk, CT 06854-1631

John Deere Const & Forestry
6400 NW 86th Street
Johnston, IA 50131

Lease Consultants Corp.
PO Box 71397
Des Moines, IA 50325

Mack Financial Services
PO Box 26131
Greensboro, NC 27402-6131

Mercedes-Benz Financial Svcs
13650 Heritage Parkway
Fort Worth, TX 76177

Northland Capital Equipment
PO Box 7278
Saint Cloud, MN 56302-7278

Northwest Equipment Sales
2405 S Janeen Street
Boise, ID 83709

Northwest Equipment Sales
PO Box 16510
Boise, ID 83715

Open Road Financial Services
Trena Harustak
PO Box 484
Dallas, OR 97338-0484

Paccar Financial Corp.
PO Box 1618
Bellevue, WA 98009

Porter Billing Services
2112 1st Ave N
Birmingham, AL 35203

QL Titling Trust LDT
PO Box 83265
Chicago, IIL 60691-0265

Transportation Alliance Bank
4185 Harrison Blvd Ste 200
Ogden, UT 84403

US Bank
1310 Madrid Street
Marshall, MN 56528

Vehicle Lenders Group, LLC
23 Berry Hill Road
Oyster Bay, NY 11771

VFS US LLC
PO Box 23161
Greensboro, NC 27402

Volvo Financial Services
PO Box 26131
Greensboro, NC 27402

Wex Bank
7090 Union Parkcenter
Ste 350
Midvale, UT 84047

Jack Verbree Jr. Dairies, LLC
PO Box 30
Wendell, ID 83355-3023



# PACCAR FINANCIAL

## EQUIPMENT LEASE AGREEMENT

**LESSOR:** PACCAR Financial Corp.
PO Box 1518
Bellevue, Washington  98009

| | |
|---|---|
| **LEASE Dated:** | April 8, 2016 |
| **LESSEE Name:** | Fields Trucking LLC |
| **Place of Business:** | 1262 Inca Drive |
| | Twin Falls, ID  83301 |
| **Mailing Address:** | Same as Above |

### TERMS AND CONDITIONS

1. **LEASE:** The above-named Lessor hereby leases to the above named Lessee (including each and every Lessee jointly and severally if there are more than one Lessee) and Lessee hereby leases from Lessor, subject to the terms and conditions hereof and the terms and conditions of any Schedules executed by Lessee and Lessor which reference the Equipment Lease Agreement ("Agreement"), the personal property described in each such Schedule, together with all present and future attachments, accessories, replacement parts, additions (including bodies) and all proceeds thereof, collectively referred to as the "Equipment."

2. **EFFECTIVE DATE:** The terms and conditions hereof and the obligations and liabilities of Lessor and Lessee hereunder shall become effective on the date of Lessor's acceptance of this Agreement ("Effective Date"), even if no Equipment is specified in a Schedule at that time, or if Equipment is so specified but has not yet been delivered to and accepted by Lessee.

3. **SCHEDULES AND ACCEPTANCE CERTIFICATES:** The items of Equipment subject to this Agreement are those vehicles delivered to PACCAR Financial Corp. In accordance with the Sales Order attached to this Agreement as Attachment A. Each item of Equipment subject to this Agreement shall be described in a Schedule, in the form attached hereto. More than one item may be set forth on a Schedule, and more than one Schedule may be included under this Agreement. When Equipment is set forth on a Schedule signed by both Lessor and Lessee, such Schedule is an integral part of this Agreement and the rights and duties of Lessor and Lessee with regard to that Equipment are governed by this Agreement and such Schedule. In the event of any inconsistency between this Agreement and any Schedule, the terms of such Schedule shall control as to the Equipment listed on such Schedule. When Equipment is delivered to Lessee by Lessor, Lessee shall immediately inspect the Equipment for compliance with the requirements of this Agreement and the relevant Schedule. If the Equipment is acceptable to Lessee, Lessee shall sign and deliver to Lessor an Acceptance Certificate in the form attached hereto. However, if Lessee retains possession of the Equipment for more than 5 days for any reason, or if Lessee makes any use of the Equipment to any extent or for any reason, then the Equipment shall be deemed accepted for this Agreement as fully as if Lessee signed the Acceptance Certificate, even if a signed Certificate is not delivered to Lessor.

4. **LESSOR'S TITLE:** The Equipment is and shall at all times remain personal property. No right, title or interest in or to the Equipment shall pass to Lessee, except for Lessee's rights to possession, quiet enjoyment and use of the Equipment subject to the terms and conditions of this Agreement and for so long as Lessee is not in default of this Agreement. Title to the Equipment will at all times remain in Lessor's name and Lessee shall at all times, at its own cost and expense, protect and defend the title of Lessor from and against all claims, liens, encumbrances and legal processes of creditors of Lessee or of others claiming by or through Lessee, and keep the Equipment free and clear from all such claims, liens, encumbrances and processes. Lessee acknowledges and agrees that Lessor is the owner of the Equipment for Federal income tax purposes.

5. **REGISTRATION AND OTHER FILINGS:** Each item of Equipment shall be registered and the certificate of ownership and the certificate of registration shall be issued with such person or persons as Lessor may designate shown as the legal owner, registered owner, first lien holder and/or the user or operator. Lessee acknowledges that the certificates of ownership and/or registration will be completed as required by applicable law and as required to protect Lessor's interests in the Equipment, and Lessee agrees that nothing contained on any such certificate shall expand or otherwise affect the rights of Lessee in the Equipment as set forth herein. Lessee shall be solely responsible for the costs and expenses associated with applying for and obtaining all such certificates. Lessee shall also be solely responsible for the costs and expenses of, and shall take whatever actions are necessary, to renew and maintain such certificates of ownership and registration and to avoid suspension or revocation of such certificates. In the event that a new certificate of ownership or registration is required, such certificates shall be obtained in the same manner and subject to the same requirements as set forth above. In the event that the Lessor deems it advisable at any time to prepare or file additional notices, filings or other documents (for example: UCC-1s or another form of financing statement) in order to protect its interests in and to the Equipment, Lessee shall cooperate fully with Lessor and shall sign each such document and hereby irrevocably consents to and authorizes Lessor to act as Lessee's attorney-in-fact to sign each and every such document in Lessee's name, place and stead, with as much force and effect as if Lessee had itself manually signed such document. Lessee will use the USDOT number issued to Lessee by the U.S. Department of Transportation for registration purposes.

6. **IDENTIFICATION OF EQUIPMENT AND RIGHT OF INSPECTION:** Upon Lessor's request, Lessee shall, at Lessee's own expense, permanently affix to the Equipment in a conspicuous place such labels, signs or other devices as Lessor may require to identify Lessor as the owner and Lessor of the Equipment. Lessor shall have the right to inspect the Equipment at all reasonable times and from time to time.

7. **DISCLAIMER OF WARRANTY AND LIMITATION OF LIABILITY:** Lessee acknowledges and agrees that each item of Equipment listed on any Schedule has been selected by Lessee for inclusion in this Agreement based solely upon Lessee's own judgment and without reliance upon any representations or warranties by Lessor. Lessor is not the designer, manufacturer, distributor or seller of the Equipment leased hereunder, and LESSOR MAKES NO REPRESENTATIONS AND SPECIFICALLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT LEASED HEREUNDER, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE OR INTENDED USE. LESSOR SHALL HAVE NO LIABILITY TO LESSEE FOR ANY CLAIM, LOSS OR DAMAGE CAUSED OR ALLEGED TO BE CAUSED DIRECTLY, INDIRECTLY, INCIDENTALLY OR CONSEQUENTIALLY BY THE EQUIPMENT, BY ANY INADEQUACY THEREOF OR DEFECT OR DEFICIENCY THEREIN, OR BY ANY INCIDENT WHATSOEVER THEREWITH, WHETHER ARISING IN TORT, STRICT LIABILITY, NEGLIGENCE, CONTRACT OR OTHERWISE, OR IN ANY WAY RELATED TO OR ARISING FROM THIS AGREEMENT. During the term of the lease of each item of Equipment, Lessor hereby assigns to Lessee all of the rights and benefits of any warranties made by the manufacturer or seller of such Equipment, and Lessor further agrees to exercise for the benefit of Lessee any such rights and benefits which cannot be assigned.

8. **TERMS AND RENTALS:** The lease term ("Term") for each item of Equipment shall be as specified in the applicable Schedule. Lessee agrees to pay Lessor rental payments for each item of Equipment, including any advance rental payments ("Rental Payments"), in accordance with the payment schedule specified in such Schedule.

9. **SECURITY DEPOSIT:** The security deposit, if any, specified on each Schedule shall secure the full and faithful performance of all agreements, obligations and warranties of Lessee hereunder, including but not limited to, the agreement of Lessee to return the Equipment upon the expiration or earlier termination of the Term of this Agreement, in the condition herein specified. Such deposit shall not ensure the performance of any such agreements, obligations or warranties of Lessee or prevent a default in the event of a failure of Lessee to so perform. Lessor may (but need not) apply all or any part of such security deposit toward discharge of any overdue obligation of Lessee. To the extent any portion of such security deposit is so applied by Lessor, Lessee shall immediately restore the security deposit to its full amount. If upon the expiration of the Term with respect to all of the Equipment on any Schedule, Lessee shall have fully complied with all of its agreements, obligations and warranties hereunder (including its obligations with respect to Equipment listed on any other Schedules), the unused portion of any security deposit with respect to said Schedule will be refunded to Lessee. Lessor shall not be obligated to pay any interest on any such deposit.

10. **PLACE OF PAYMENT AND OBLIGATION TO PAY:** All Rental Payments are payable without notice or demand at Lessor's address as set forth herein or at such other address as Lessor may specify in writing from time to time. Unless otherwise specifically provided herein, Lessee's obligation to pay the Rental Payments and all other amounts due or to become due hereunder shall be absolute and unconditional under all circumstances, regardless of (a) any claim, counterclaim, set-off, recoupment, defense or other right which Lessee may have or claim to have for any reason against Lessor, the manufacturer or seller of the Equipment, or any third party, or (b) any interruption in or cessation of Lessee's use or possession of the Equipment for any reason whatsoever.

11. **DELINQUENCY CHARGES:** For each Rental Payment or other sum due hereunder which is not paid within ten (10) days after it is due, Lessee agrees to pay Lessor a delinquency charge calculated thereon at the greater of (a) the rate of one and one half percent (1½%) per month for the period of delinquency or (b) 5% of such Rental Payment or other sum due hereunder, provided that such delinquency charge shall not be in excess of the maximum amount permitted by law without creation of a defense or imposition of a penalty.

EXHIBIT
A

CAT. NO. 4052 LDM (8/2015)

# PACCAR FINANCIAL

## EQUIPMENT LEASE AGREEMENT

**12. MODIFICATION OF EQUIPMENT AND ASSIGNMENT:** Lessee shall not modify, assign, transfer or sublet the Equipment, this Agreement or Lessee's interests hereunder without Lessor's prior written consent (which may be withheld in Lessor's reasonable discretion), nor shall Lessee's interests hereunder inure to the benefit of any trustee, receiver, creditor or successor of Lessee or of its property, whether or not in bankruptcy, by operation of law, or otherwise. This Agreement and all amounts due hereunder may be assigned at any time by Lessor without Lessee's consent. Upon notice of any assignment from Lessor to its assignee, Lessee shall make all payments coming due thereafter to the assignee without offset, counterclaim or defense of any kind. LESSEE FURTHER AGREES THAT LESSOR MAY, WITHOUT NOTICE TO OR CONSENT OF LESSEE, SELL OR GRANT A SECURITY INTEREST IN THE EQUIPMENT AND, IN SUCH EVENT, LESSEE'S RIGHTS IN AND TO THE EQUIPMENT SHALL BE SUBJECT AND SUBORDINATE TO THE INTEREST AND RIGHTS, INCLUDING THE RIGHT OF POSSESSION, OF ANY SUCH PURCHASER OR HOLDER OF A SECURITY INTEREST IN THE EQUIPMENT. Lessor manages certain of its assets through a like-kind exchange program. In connection therewith, notice is hereby given that the rights, but not the obligations, of Lessor to purchase and sell the assets contained herein have been assigned to PFC Exchange, LLC pursuant to an agreement between Lessor and PFC Exchange, LLC.

**13. LESSEE'S GENERAL DUTIES:** Lessee agrees, at its own cost and expense: (a) to use the Equipment in a careful and prudent manner in the regular course of Lessee's business and to permit only qualified personnel to use the Equipment, notifying each such person that he or she is not an employee of Lessor nor under Lessor's direction or control; (b) to comply with all applicable laws, rules and regulations relating to the possession, use or maintenance of the Equipment; (c) to comply with any published instructions, procedures or specifications of the manufacturer of the Equipment and of the party selling the Equipment to Lessor; (d) to comply with all of the terms and conditions of each and every insurance policy covering the Equipment; (e) to obtain any and all certificates, permits or licenses required or permitted by law with respect to the Equipment, subject to Lessor's instructions; and (f) to furnish Lessor promptly with any financial information or other information which Lessor may reasonably request from time to time.

**14. MAINTENANCE AND REPAIR:** Lessee shall, at its own cost and expense, keep the Equipment in good condition, repair and appearance and to comply with all of the manufacturer's recommended procedures in this regard. In addition, Lessee shall maintain the Equipment in compliance with all applicable federal, state and local safety, environmental and other rules and regulations. Lessee shall furnish, at its own expense, all necessary fuel, lubricants, grease, antifreeze, tires, tubes and all other replacement parts and supplies necessary for maintenance and lawful operation of the Equipment. Lessee shall not alter or modify the Equipment in any manner that adversely affects its value. All parts installed and any modifications and alterations made in the course of the ordinary maintenance and repair of the Equipment shall become the property of Lessor and shall remain the property of Lessor upon termination of this Agreement unless otherwise provided herein.

**15. INSURANCE:** Lessee agrees to keep the Equipment continuously insured against comprehensive and collision damage, and any other hazards Lessor may specify from time to time, by an insurance company and with a deductible approved by Lessor. The amount of insurance shall be the full insurable value of the Equipment or the full amount of all obligations arising under this Agreement, whichever is greater. The insurance policy must include in a form acceptable to Lessor, a lender's loss payable endorsement naming Lessor as a lender's loss payee under the policy. Lessee shall also obtain automobile liability coverage from an insurance company approved by Lessor, with an AM Best rating of A- or better. The policy shall provide the limits of liability the Lessee is required to carry by the Federal Department of Transportation ("DOT") or the governing State Department of Transportation if the Lessee is not subject to regulation under the DOT or $1,000,000, whichever is greater. Territory limitations, commodity restrictions or driver exclusions in the policy are not allowed. The policy must provide, in a form acceptable to Lessor, that Lessor is an additional insured under the policy. If the Lessee is required to carry $5,000,000 limits of liability, the automobile liability insurance must include pollution liability coverage within those limits. The terms of the pollution liability coverage must be substantially in the form of those provided by Insurance Services Office Form CA 9948 and the policy must include an MCS 90 filing. Lessee shall be solely responsible for any deductibles or self insured retentions under the policies of insurance required under this provision. If the Equipment is lost or damaged, any and all insurance proceeds shall be paid to Lessor, and Lessor may apply them as it chooses either (i) to satisfy any obligation arising under this Agreement (whether or not due or otherwise matured), or (ii) to repair the Equipment. Each policy must provide that Lessor's interest therein shall not be invalidated by any acts, omissions or neglect of anyone other than Lessor, and that the policy can be canceled only after written notice of intention to cancel has been delivered to Lessor at least thirty (30) days before the cancellation date. Lessee shall deliver to Lessor proof of insurance coverage acceptable to Lessor. If Lessee obtains insurance from a company Lessor has not approved or fails to obtain any insurance, Lessor may (but is not required to) obtain any insurance Lessor desires to protect its interests, and Lessee shall immediately reimburse Lessor for the cost thereof. Lessee shall be solely liable for any losses which occur because no insurance has been obtained or the coverage of the insurance which has been obtained is incomplete, even if Lessor has reviewed the insurance coverage.

**16. TAXES AND CHARGES:** On and after the Effective Date, Lessee agrees to pay promptly to the appropriate governmental agency or, upon Lessor's request, to Lessor, all taxes, assessments, levies, duties, payment of all kinds, any fines for toll evasion, and other governmental charges (including any penalties and interest and any fees for filing or registration) levied or assessed against Lessee, Lessor or the Equipment, upon or with respect to this Agreement or the purchase, use, operation, leasing, ownership, value,

return or other disposition of the Equipment, or the rent, earnings or receipts arising therefrom, exclusive, however, of any taxes based on Lessor's net income and exclusive of any sales taxes paid by Lessor with respect to its initial purchase of the Equipment which have already been included in the cost of the Equipment under the applicable Schedule. If requested by Lessor, Lessee agrees to prepare on behalf of Lessor and in a form satisfactory to Lessor at requested tax returns and reports concerning the Equipment, to file such returns and reports with all appropriate governmental agencies on or before the due date therefor, and to mail a copy thereof to Lessor concurrently with such filing. Lessee further agrees to keep or cause to be kept and made available to Lessor any and all necessary records relevant to the use of the Equipment and pertaining to the aforesaid taxes, assessments and other governmental charges. The obligations arising under this Section shall survive payment of all other obligations under this Agreement and the termination of this Agreement.

**17. LOSS OR DESTRUCTION OF EQUIPMENT:** Lessee assumes the risk of direct and consequential loss and damage to the Equipment. Except as provided in this Section, no loss or damage to the Equipment or any part thereof shall release or impair any obligations of Lessee under this Agreement. Furthermore while the Equipment is in transit and throughout the duration of this Agreement including while the Equipment is in the possession of a third party, so long as Lessee has an insurable interest therein, Lessee agrees to assume the entire risk of the Equipment cost of any partial, complete or constructive loss with respect to the Equipment from any cause whatsoever including theft, loss, damage, destruction or governmental taking, whether or not such loss is covered by insurance or caused by any default or neglect of Lessee. Lessee agrees to give Lessor immediate notice of any damage to or loss of any Equipment. All physical damage insurance proceeds shall be payable directly to Lessor. If any of the Equipment is lost, destroyed, damaged beyond repair, or taken by governmental action, on the next succeeding rental payment date, Lessee will (1) either replace the Equipment with like-kind Equipment, free and clear of any liens or rights of other parties, acceptable to Lessor or Lessor's assignee and continue to pay all rentals without interruption as they come due, or (2) cause insurance carrier to promptly pay to Lessor the casualty value as shown in the Casualty and Termination Value Schedule ("Casualty Value") attached hereto, as of the date of payment thereof, plus all accrued and unpaid Rental Payments and other amounts then due and owing under this Agreement. Following payment of any Casualty Value, and if no Event of Default has occurred and remains continuing, Lessor will then: (a) transfer to Lessee Lessor's rights to such Equipment "as is," "where is" and with all defects, without recourse and without representation or warranty, express or implied, other than a warranty that the Equipment is free and clear of any liens created by Lessor; and (b) remit to Lessee any physical damage insurance proceeds arising out of such loss up to the amount of the Casualty Value paid. Lessor shall determine in the exercise of its reasonable judgment whether the Equipment is damaged beyond repair. In the event of damage or loss, which does not result in damage beyond repair or a total loss of the Equipment or any item thereof, Lessee shall cause the affected Equipment to be restored to the condition required by the terms of this Agreement. Upon completion of such repair and after applying Lessor with satisfactory evidence thereof (and provided no Event of Default has occurred and remains continuing), Lessee shall be entitled to receive any insurance proceeds or other recovery to which Lessor would otherwise be entitled in connection with such loss up to the amount expended by Lessee in making the repair. Lessor shall not be obligated to undertake any litigation or otherwise the collection of any claim against any person for loss of, damage to, or government agency taking of the Equipment.

**18. RETURN TO LESSOR:** Upon the expiration of the Term for any Equipment, Lessee shall return, at Lessee's sole expense, such Equipment to Lessor at such place as is designated by Lessor at that time and in the same condition as when received by Lessee, except only reasonable wear and tear resulting from the normal and customary use thereof. However, if any Schedule to this Agreement contains specific requirements for the condition of the Equipment upon its return to Lessor the Equipment must satisfy such requirements. Lessee shall pay to Lessor on demand, as additional rental hereunder, the cost of any repairs necessary to place the Equipment in the condition required by this Agreement at that time.

Until the Equipment is returned to the Lessor after the expiration of the Term or any end of Term purchase option price is paid in full, Lessee agrees to continue to pay Rental Payments in the same amount as in effect at the end of the Term (Holdover Liability). Lessor's right to recover Holdover Liability is in addition to any other right or remedy provided in this Agreement and shall in no way limit or impair Lessor's rights and remedies hereunder, including, without limitation, Lessor's absolute right to possession of the Equipment upon default or at the end of the Term.

**19. FAIR MARKET VALUE PURCHASE OPTION:** Provided Lessee shall have fully complied with all of the terms and conditions of this Agreement, the Lessee shall have the option at the end of the Term for each item of Equipment, to purchase such Equipment for its Fair Market Value on an "AS IS, WHERE IS" basis without any warranty by Lessor. This option must be exercised by written notice to the Lessor, not earlier than one hundred twenty (120) days prior to nor later than sixty (60) days prior to the end of the Term for each item of Equipment. The "Fair Market Value" shall be determined by mutual agreement of the Lessor and Lessee; provided that, if Lessor and Lessee are unable to agree upon the Fair Market Value of the Equipment within thirty (30) days after receipt by the Lessor of the Lessee's election to exercise the purchase option, the Fair Market Value shall be determined by an appraiser selected by the Lessor. Lessee acknowledges and agrees that the Lessor may select, as appraiser, the party that sold the Equipment to Lessor. The cost of such appraisal shall be borne by Lessee. If the purchase option set forth herein is exercised, the Fair Market Value purchase price shall be paid in full to Lessor at the end of the Term for such Equipment.

CAT. NO. 4052 LDM (9/2015)                    Page 2 of 4

# PACCAR
# FINANCIAL

## EQUIPMENT LEASE AGREEMENT

**20. TERMINAL RENTAL ADJUSTMENT CLAUSE OR MODIFIED TERMINAL RENTAL ADJUSTMENT CLAUSE:** If Lessee so elects by executing a Terminal Rental Adjustment Clause ("TRAC") Supplement or Modified Terminal Rental Adjustment Clause ("MOD-TRAC") Supplement in the form attached hereto with regard to one or more items of Equipment, then there shall be a terminal rental adjustment for such Equipment as further specified in such Supplement. If this Agreement is terminated with respect to any item of Equipment covered by a TRAC or MOD-TRAC Supplement for any reason other than expiration of the Term, then this Section shall not apply and Lessee's rights and obligations shall be governed by the other Sections hereof.

**21. PERFORMANCE OF OBLIGATIONS OF LESSEE BY LESSOR:** If Lessee fails to perform duly and promptly any of its obligations under this Agreement, Lessor may perform the same, but shall not be obligated to do so, to protect the interests of Lessor, Lessee or both, and any cost, liability or expense (including reasonable attorney's fees) incurred by Lessor in such performance shall be paid to Lessor by Lessee upon demand as additional rent for the Equipment.

**22. GENERAL INDEMNITY:** Lessee assumes liability for and agrees to indemnify, defend and hold Lessor, its agents, employees, successors and assigns harmless from any and all actions, suits, liabilities, obligations and claims of every nature (including, without limitation, those arising from contract, strict or absolute liability in tort, product liability, negligence, or any other cause) and from any and all damages, awards, penalties, fines, forfeitures, settlements, interest and attorney's fees awarded to any person whomsoever and regardless of the reason, which directly or indirectly results from or relates to the manufacture, delivery, purchase, sale, ownership, leasing, use, possession, operation, condition (including, without limitation, latent or other defects, whether or not discoverable), repossession, recovery, return, disablement or storage of the Equipment. The amount to be paid Lessor by Lessee hereunder shall include the amount, if any, necessary to reimburse Lessor for any taxes (including Federal income tax), which Lessor is required to pay in respect of the amounts received under this Section, including any interest, penalties and additions to tax. For the purposes of this Section, the term Lessor shall include the affiliated taxpayer group, within the meaning of Section 1504 of the Internal Revenue Code as amended ("Code") of which Lessor is a member. Lessee's indemnities and liabilities under this Section shall continue in full force and effect, notwithstanding the expiration or termination of this Agreement for any reason.

Upon request of Lessor, Lessee shall assume the defense of any and all demands, claims, actions, suits and all other proceedings against Lessor for which indemnity is provided herein, and Lessee shall allow Lessor to participate in the defense thereof. At Lessor's option, Lessor may assume the defense of the matter, but this shall not relieve or reduce Lessee's obligations to indemnify Lessor as set forth herein.

**23. TAX INDEMNITY:** Lessee acknowledges that the Lessor is the owner of the Equipment for Federal income tax purposes and that Lessor intends to take the accelerated cost recovery deductions ("ACRS Deductions") as provided by Section 168 of the Code. Accordingly, Lessee agrees that at all times during the term of this Agreement, Lessee shall not take any action, fail to take any action, assert any claim or make any representation which results, or may result, in the loss to Lessor of ACRS Deductions. In the event that the ACRS Deductions are lost, reduced or delayed due to any act or omission by Lessee, Lessee agrees to promptly pay to Lessor, as additional rent, an amount such that the portion remaining after deduction of all taxes required to be paid by Lessor in respect to the receipt of such amount (including Federal income tax) shall fully compensate Lessor for the loss, reduction or delay of the ACRS Deductions, including any interest, penalties and additions to tax. Lessor shall have no obligation to contest, beyond the level of an Internal Revenue Service auditing agent, any recapture, disallowance, elimination, reduction or disqualification caused by any act or omission of the Lessee. Lessee also acknowledges that there is a possibility that, after the commencement of this Agreement, the Code, or any regulations promulgated thereunder, might be amended or changed so as to deprive Lessor of the right to claim all or part of the ACRS Deductions, or to lengthen the time period over which the Equipment must be depreciated, or in some other manner impair Lessor's after-tax margin with respect to this Agreement ("Tax Benefits"). In the event that the Lessor's Tax Benefits are impaired due to an amendment or change to the Code, or any regulations promulgated thereunder, the Lessee agrees to pay the Lessor an adjusted rent over the remaining term of this Agreement such that Lessor's after-tax margin (after consideration of all taxes, including Federal income tax, and increased costs) with respect to this Agreement is maintained. Lessor shall have no obligation to contest any impairment of Tax Benefits due to an amendment or change to the Code or any regulations promulgated thereunder. For the purposes of this Section, the term Lessor shall include the affiliated taxpayer group, within the meaning of Section 1504 of the Code, of which Lessor is a member. Lessee's indemnities and liabilities under this Section shall continue in full force and effect notwithstanding the expiration or termination of this Agreement for any reason.

Lessee acknowledges that the percentages set forth in the Casualty and Termination Schedules attached hereto have been computed on the assumption that Lessor shall be entitled to the Tax Benefits as allowed under the present Code. Accordingly, in the event Lessee becomes obligated to pay additional sums to Lessor, the percentages set forth in the schedules shall be revised as may be necessary in the reasonable opinion of Lessor so that the amount payable by Lessee in the event of a casualty loss or termination shall be sufficient to maintain Lessor's net after-tax margin at the same level that would have been available to the Lessor upon payment of the Casualty

Value or Termination Value had the Tax Benefits been allowed in the manner permitted under the present Code. The revised schedule shall be utilized to calculate any payment of Casualty Value or Termination Value due after the liability of Lessee hereunder shall become fixed regardless of the date of such casualty or other occurrence. Further, with respect to any previous payment of Casualty Value or Termination Value under the lease by the Lessee, the Lessee shall pay to Lessor the additional amount, in excess of the amount actually paid, that the Lessee would have been required to pay had the liability of Lessee become fixed prior to the date of the original payment.

**24. DEFAULT:** Time is of the essence under this Agreement. The occurrence of any of the following events shall be deemed a default hereunder or under any Schedule to the extent that any such default is not cured within ten (10) days of the event of default (each, an "Event of Default"): (a) Lessee's failure to pay when due the full amount of any payments required hereunder, including, without limitation, rents or additional rents, delinquency and late charges, interest, taxes, insurance, the costs of maintenance or repairs, amounts due for indemnification, the Casualty or Termination Values (if applicable) or any other amounts; (b) Lessee's failure to perform any action or other obligation required by the terms hereof to be performed by Lessee; (c) any attempt by Lessee to remove, sell, transfer, sublease, encumber, or otherwise transfer, dispose or part with possession of the Equipment without Lessor's prior written consent; (d) the Lessee admits to making a fraudulent statement or it is determined by a judicial or administrative proceeding the Lessee has made a fraudulent statement or statements to induce the Lessor to extend credit in connection with this Agreement; (e) Lessee's death, dissolution, or other termination of existence; (f) Lessee's becoming insolvent or becoming the subject of a petition in bankruptcy, either voluntarily or involuntarily, or Lessee's making an assignment for the benefit of creditors, or being named or subjected to a suit for the appointment of a receiver; (g) seizure of or levy upon any Equipment leased hereunder by reason of any legal or governmental process directed against Lessee; (h) any merger of the Lessee with or into any person, or any sale, conveyance, transfer, lease or disposition (whether in one transaction or a series of transactions) of all or substantially all of the Lessee's assets without the prior approval of Lessor; (i) Any change in the Chief Executive Officer and/or Chief Financial Officer of the Lessee without prior notification to Lessor.

**25. TERMINATION VALUE:** Lessor and Lessee hereby agree that the amount set forth under the appropriate entry of the termination value section of the Casualty and Termination Value Schedule attached hereto ("Termination Value") represents the amount necessary to compensate Lessor for any breach by Lessee of its obligation to make future Rental Payments under this Agreement with regard to the items of Equipment shown on such Schedule. In the event of Lessee's breach of its Rental Payment obligation, Lessee agrees to pay Lessor the Termination Value (determined by reference to the most recent Rental Payment date shown thereon) as liquidated damages and not as a penalty. The Termination Value does not include, and Lessee shall remain liable for and shall immediately pay to Lessor, all other amounts due under this Agreement (except for the future Rental Payments), including but not limited to past due Rental Payments, delinquency and late charges, taxes, insurance, costs of maintenance and repair, and any amounts due under the indemnification provisions hereof.

**26. REMEDIES:** In the event of any default by Lessee under this Agreement, Lessor shall have all of the rights and remedies permitted at law and in equity. The rights and remedies available to Lessor may vary with the law of the applicable jurisdiction, and Lessee acknowledges and agrees that Lessor shall be entitled to exercise any and all available rights and remedies in any combination or sequence not expressly prohibited by law. Lessee hereby agrees and consents to any rights or remedies which are available to Lessor as if Lessee has so agreed or consented. Unless prohibited by applicable law, Lessor's available rights and remedies in the event of a default by Lessee include, without limitation: (a) without terminating this Agreement, request Lessee to assemble any or all of the Equipment, to make the same available to Lessor at a reasonable place designated by Lessor, and to put Lessor in possession thereof; (b) without terminating this Agreement, immediately and without legal proceedings or notice to Lessee enter Lessee's premises, take possession of, remove and retain any or all of the Equipment or render the same unusable; (c) without terminating this Agreement, declare the Termination Value and all other sums payable hereunder immediately due and payable; (d) without notice to Lessee, terminate the Agreement as to any or all of the Equipment leased hereunder, but such termination shall not release Lessee from the liabilities and obligations arising from such breach; and (e) sell or otherwise dispose of any or all of the Equipment at private or public sale, or re-lease any or all of the same on such terms and conditions as Lessor deems appropriate. In the event that Lessor repossesses, re-leases, sells or otherwise disposes of the Equipment, any net proceeds of such action which are attributable to Lessee's interest in the Equipment under this Agreement shall be applied against Lessee's obligations hereunder. Unless otherwise required by applicable law, any remaining net proceeds shall belong solely to Lessor. Lessee shall be liable for any amounts due to Lessor hereunder after application of the net proceeds as set forth above. The net proceeds shall be determined by deducting from the gross sales proceeds, or from the net present value of the proceeds of a re-lease, any applicable sales, use and excise taxes, and sales or other fees or commissions actually paid to any party (including the party who sold the Equipment to Lessor) who helps Lessor sell or otherwise dispose of the Equipment, and Lessor's expense of locating, repossessing, repairing, preparing and disposing of the Equipment, including attorney's fees.

Page 3 of 4

CAT. NO. 4052 LDM (9/2015)



# PACCAR FINANCIAL

## EQUIPMENT LEASE AGREEMENT

Lessee hereby expressly waives any rights it may have to possession of the Equipment after default and all claims it may have for damages or injuries suffered through or loss caused by any repossession, sale or other disposition of the Equipment hereunder. Lessee agrees that any property other than Equipment which is in or upon the Equipment at the time of repossession may be taken and held without liability until its return is requested by Lessee. Lessee hereby acknowledges and agrees that any applicable standard of commercial reasonableness will be satisfied if the Lessor sells or otherwise disposes of the Equipment by any method which is customarily used for similar Equipment, or which Lessor has used or would use for similar Equipment owned solely by Lessor, even if Lessee believes or proves that a different method of disposition would have been more beneficial for Lessee. Unless otherwise required by law, any requirement of reasonable notice regarding the re-lease, sale or other disposition of the Equipment which Lessor may be obligated to give will be met if such notice is mailed to Lessee at its address shown herein at least ten (10) days before the time of such re-lease, sale or other disposition. Nothing herein contained shall require Lessor to re-lease, sell or otherwise dispose of the Equipment.

27. NOTICES: All notices relating hereto shall be either delivered in person to an officer of Lessor or Lessee, or be sent by certified mail, return receipt requested, to Lessor or Lessee at its address as shown on the face hereof or to the last known address of the recipient.

28. LIMITATIONS ON USE: The Equipment shall not be used in the transportation of radioactive materials, hazardous wastes, explosives, hazardous materials, gasses or liquids, unless Lessor has expressly approved the transportation of such material in writing.

29. WAIVER OF JURY TRIAL: EXCEPT AS OTHERWISE PROVIDED BY APPLICABLE LAW, EACH OF LESSOR AND LESSEE WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, BETWEEN LESSOR AND LESSEE ARISING OUT OF, CONNECTED WITH, RELATED TO OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THIS AGREEMENT OR OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION THEREWITH OR THE TRANSACTIONS RELATED THERETO. LESSOR AND LESSEE HEREBY AGREE AND CONSENT THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY AND THAT EITHER PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS AGREEMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE WAIVER OF THE PARTIES HERETO OF THEIR RIGHT TO TRIAL BY JURY.

30. MISCELLANEOUS: This Agreement constitutes the entire understanding of the parties and supersedes any and all prior understandings or agreements, oral or written between and among the parties respecting the within subject matter. This Agreement shall be binding upon the successors, assigns and legal representatives of the parties hereto. This Agreement may not be modified unless in a writing signed by both parties. No provision of the Agreement may be waived unless in a writing signed by the party to be bound by the waiver, and the waiver of any default shall not be or be deemed to be a waiver of any other or subsequent default. The provisions of this Agreement are severable, and if a court of competent jurisdiction determines that any of these are unenforceable in accordance with their terms, the court may modify, sever or divide such provisions as necessary to enforce those provisions to the extent they may be found to be reasonable and to enforce all remaining provisions. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and such counterparts together constitute but one agreement. In the event of litigation concerning this Agreement, the prevailing party shall be entitled to recover its costs and expenses, including reasonable attorney's fees.

The lessee of this heavy-duty tractor understands that when using a heavy-duty tractor to pull a 53-foot or longer box-type trailer on a highway within California, the heavy-duty tractor must be compliant with sections 95300 - 95311, title 17, California Code of Regulations, and that it is the responsibility of the lessee to ensure this heavy-duty tractor is compliant. The regulations may require this heavy-duty tractor to have low rolling resistance tires that are U.S. Environmental Protection Agency (U.S. EPA) Verified SmartWay Technologies prior to current or future use in California, or may entirely prohibit use of this tractor in California if it is a model year 2011 or later tractor and is not a U.S. EPA Certified SmartWay Tractor.

The lessee of this box-type trailer understands that when using a heavy-duty tractor to pull a 53-foot or longer box-type trailer on a highway within California, the box-type trailer must be compliant with sections 95300 - 95311, title 17, California Code of Regulations, and that it is the responsibility of the lessee to ensure this box-type trailer is compliant. The regulations may require this trailer to have low rolling resistance tires and aerodynamic technologies that are U.S. Environmental Protection Agency Verified SmartWay Technologies prior to current or future use in California.

**ALL TERMS AND CONDITIONS OF THIS AGREEMENT ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.**

**LESSEE ACKNOWLEDGES THAT LESSEE HAS RECEIVED A TRUE COPY OF THIS AGREEMENT, LESSEE HAS READ IT AND IT WAS COMPLETELY FILLED IN BEFORE LESSEE SIGNED IT.**

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. A photocopy or electronic signed copy of any such counterpart shall have the same force and effect as an original (ink) signature.

| ACCEPTED BY: PACCAR Financial Corp. | LESSEE: Fields Trucking LLC |
|---|---|
| BY: _(signature)_ | BY: _(signature)_ |
| Barbara Coccia | Steven E. Fields |
| TITLE: Area Administration Manager | TITLE: Member |
| ADDRESS: 777 - 106th Ave NE, Bellevue, WA 98004 | ADDRESS: 1252 Inca Drive, Twin Falls, ID 83301 |
| DATE: April 8, 2016 | DATE: April 8, 2016 |

CAT. NO. 4052 LDM (9/2015)



# PACCAR FINANCIAL

**LEASE GUARANTY**

Reference is made to the Equipment Lease Agreement ("Agreement") dated April 8, 2016 between 'PACCAR Financial Corp.    ("Lessor") and Fields Trucking LLC ("Lessee").

In order to induce Lessor to enter into the Agreement, and for other valuable consideration the receipt and sufficiency of which is hereby acknowledged, Guarantor (and if more than one; each of the undersigned Guarantors jointly and severally) hereby unconditionally and irrevocably guarantees to Lessor and its assigns that, regardless of the enforceability of the Agreement or of any other circumstance which might affect the liability of Lessee or of Guarantor: (i) all of Lessee's payment and other obligations under the Agreement ("Obligations") will be performed or paid in full in accordance with the terms of the Agreement, and (ii) in case of any extension of time of payment or other change, amendment or modification of the Obligations, they will be performed or paid in full in accordance with the terms of such extension, change, amendment or modification. In the event that any of the Obligations are not performed or paid in full when due for whatever reason, including Lessee's bankruptcy, insolvency or receivership or a discharge or release of the Obligations in a bankruptcy or other judicial proceeding, Guarantor will pay such amount immediately upon notice from Lessor, regardless of whether Lessor has proceeded against Lessee or the Equipment (as defined in the Agreement). Guarantor hereby waives notice of and consents to any and all changes, amendments, modifications, extensions of time of payment, renewals, releases of Equipment or any other indulgency from time to time granted to Lessee in respect of any or all of the Obligations. Guarantor hereby waives notice of acceptance, notice of presentment, demand of payment, notice of protest, notice of sale or other disposition and notice of release or other handling of the Equipment, and all other notices and demands whatsoever respecting the Obligations or the Equipment. This Guaranty shall bind the Guarantor and the Guarantor's heirs, successors and assigns. This Guaranty shall be automatically reinstated if for any reason any payment or performance in respect of the Obligations shall be rescinded or must otherwise be restored or returned, whether as a result of proceedings in bankruptcy or otherwise. Any of the undersigned Guarantors, if more than one, and any other party liable in respect of the Obligations may be released without affecting the liability of any undersigned Guarantor or Guarantors not so released. Lessor may assign this Guaranty, and if it does, the assignee shall have the same rights and remedies as if originally named herein in place of Lessor. Guarantor hereby irrevocably waives and renounces any right or claim Guarantor would otherwise have against Lessee, whether by way of indemnification, subrogation, exoneration, right of reimbursement, contribution or otherwise, as a consequence of Guarantor's making any payment under this Guarantee.

Dated this eighth day of April, 2016.

**Individual Guarantor/s**

Steven Fields

Julie Renee Fields

Address

1252 Inca Dr.
Twin Falls Id.
83301
" Same

Phone

CAT. NO. 4054b LDM 10/10



**EQUIPMENT LEASE AGREEMENT
SCHEDULE A: RENTAL PAYMENTS**

Schedule A is made a part of the Equipment Lease Agreement dated April 8, 2016 between PACCAR Financial Corp. ("Lessor") and Fields Trucking LLC ("Lessee").

| COMMENCEMENT DATE: April 8, 2016 | TERM OF LEASE(NO. OF MONTHS): 60 | LOCATION OF THE EQUIPMENT: 1262 Inca Drive; Twin Falls, ID 83301 |
|---|---|---|
| STATE OF JURISDICTION: Idaho | STATE TITLING EQUIPMENT: Idaho | BASE PLATE REGISTRATION (STATE, COUNTY, CITY): Idaho, Twin Falls, Twin Falls |

**DESCRIPTION OF EQUIPMENT**

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER | *TAXABLE GROSS WEIGHT | SCHEDULE A VALUE | MONTHLY RENTAL PMT |
|---|---|---|---|---|---|---|
| 2016 | Kenworth | W900 | 1XKWD49X8GJ103312 | 80000 | $156,688.56 | $2,509.00 |

* The reported taxable gross weight must be no more than the highest gross weight declared for any purpose including registering a vehicle in a state.

**MONTHLY RENTALS**

| 1. Schedule A Value (Total Equipment Cost) | | $156,688.56 |
|---|---|---|
| 2. Adjustments | | 0.00 |
| 3. Adjusted Schedule A Value | | 156,688.56 |
| 4. Base Monthly Value | | 2,509.00 |
| 5. Tax Additions | | |

| | | |
|---|---|---|
| State | Idaho | 0.0000% | 0.00 |
| County | Twin Falls | 0.0000% | 0.00 |
| City | Twin Falls | 0.0000% | 0.00 |
| ICC # | | (if exempt from state & local taxes) | |
| 6. Total Monthly Rentals | | $2,509.00 |

**AMOUNT DUE AT DELIVERY**

| 1. Advance Rentals | | |
|---|---|---|
| | 1 @ $2,509.00 | $2,509.00 |
| 2. Security Deposit (refundable) | | 0.00 |
| 3. Interim Rent (Extra Days) | | 0.00 |
| 4. License, Title, UCC & Registration | | 0.00 |
| 5. Other 0 | | 0.00 |
| 6. Document Preparation Fee | | 350.00 |
| 7. Total Amount Due at Delivery | | $2,859.00 |

Advance rental payment and interim rent are due at delivery, thereafter monthly rental payments are due on the same day of each month beginning May 8, 2016.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. A photocopy or electronic signed copy of any such counterpart shall have the same force and effect as an original (ink) signature.

| LESSOR: PACCAR Financial Corp. | LESSEE: Fields Trucking LLC |
|---|---|
| BY: _Barbara Coccia_ (signature) | BY: _Steven E. Fields_ (signature) |
| Barbara Coccia | Steven E. Fields |
| TITLE: Area Administration Manager | TITLE: Member |
| DATE: April 8, 2016 | DATE: April 8, 2016 |

Lessor manages certain of its assets through a like-kind exchange program. In connection therewith, notice is hereby given that the rights, but not the obligations, of Lessor to purchase and sell the assets contained herein have been assigned to PFC Exchange, LLC pursuant to an agreement between Lessor and PFC Exchange, LLC.

CAT. NO. 4053 LDM (7/2015)



February 2, 2018

Fields Trucking LLC

RE:    Account #          1682
       Collateral:    (1) 2016 K W W900 SN: 103312

Dear Customer,

PACCAR Financial has approved the request for a transfer of the equity in the above-referenced vehicle going from Fields Trucking LLC to Ryan Hinton, Inc. Signatures are required on the enclosed Lease Transfer of Interest form, Board Resolution, Sales/Use Tax Exemption Certificate, Power of Attorney, Casualty & Termination Schedule, ST-104-MV, Guaranty, and Payment Option Addendum.  Please take the following steps:

1)  A Member Fields Trucking LLC needs to sign the Transfer of Interest and Power of Attorney as indicated.

2)  An officer of Ryan Hinton, Inc. needs to sign the Transfer of Interest, Sales/Use Tax Exemption Certificate, Power of Attorney, Casualty & Termination Schedule, ST-104-MV, and Payment Option Addendum as indicated.

3)  Robert Ryan Hinton needs to sign the Personal Guaranty.

4)  Please send the total of $12,548.00 for the fees ($9,550 advance, $450 document fee, $2,509 February 2018 payment and $39 title fees). You can call 800-333-4998 and ask for the payments department to pay these fees over the phone or send them with the documents. If sent with the signed documents, please remit a check made payable to PACCAR Financial Corp.

5)  Forward proof of insurance showing Ryan Hinton, Inc. as insured. PACCAR Financial must be named as Loss Payee and Additional Insured.  Liability coverage must be at least $1,000,000. Physical Damage deductible is not to exceed $5,000. You may have the insurance agent fax a certificate directly to our office at (425) 468-8540.

Once we have received all the signed documents and a check for the processing fee, we will process the transfer a copy of the Transfer of Interest document will be returned once all parties have signed.

Please call me at 425-828-5546 if you have any questions about this process.

Sincerely,

Marie Shannon

Marie Shannon
Contract Administrator II

enclosure

PACCAR Financial Corp.
PACCAR Building P.O. Box 1518 Bellevue, WA 98009-1518 (425) 468-7100

**PACCAR FINANCIAL**

**LEASE TRANSFER OF INTEREST**
(Subject to Equipment Lease Agreement)

ACCOUNT: [____] 1882

**LESSEE AGREES: FOR VALUE RECEIVED,** and subject to the consent of PACCAR Financial Corp. ("Lessor") the undersigned Lessee hereby assigns to **Ryan Hinton, Inc.** ("New Lessee"), all its right, title, and interest in and to the below-described vehicle(s) under an Equipment Lease Agreement dated **April 8,2016** and Schedule A dated **April 8, 2016** (collectively, the "Lease") between PACCAR Financial Corp. and Lessee. Lessee hereby agrees that this assignment shall in no way operate to relieve Lessee from its obligations under said Lease. Lessee agrees that the time for making payments for any or all rental payments due or coming due under said Lease may be extended or changed at the option of Lessor and New Lessee, without Lessee's consent, and that any such extensions or changes shall not relieve Lessee from liability under said lease.

| LESSEE: Fields Trucking LLC | DATE: February 2, 2018 |
|---|---|
| BY: _(signature)_ Steven E Fields, Member | ADDRESS: 1252 Inca Drive Twin Falls, ID  83301 |

| NEW LESSEE/EQUIPMENT INFORMATION | | | |
|---|---|---|---|
| STATE OF JURISDICTION: Idaho | TITLING STATE: Idaho | EQUIPMENT ADDRESS: 1399 Fillmore St Ste 602; Twin Falls, ID 83301 | BASEPLATE STATE, COUNTY, CITY: Idaho, Twin Falls, Twin Falls |

| DESCRIPTION OF EQUIPMENT | | | |
|---|---|---|---|
| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
| 2016 | Kenworth | W900 | 1XKWD49X8GJ103312 |

**NEW LESSEE AGREES: FOR AND IN CONSIDERATION OF** the assignment to New Lessee of the Lessee's interest in the above-described Lease, New Lessee hereby agrees to make all rental payments now due or to become due under said Lease and to comply with all of the other terms and conditions of the Lease as if New Lessee had originally signed the Lease as Lessee. Rental payments under the Lease are payable in the following manner:

| MONTHLY RENTAL | | |
|---|---|---|
| Base Monthly Value | | $2,232.46 |
| Tax Additions: | | |
| State    Idaho | 0.000 % | 0.00 |
| County   Twin Falls | 0.000 % | 0.00 |
| City     Twin Falls | 0.000 % | 0.00 |
| IRP #    N/A | (If exempt from state and local taxes) | |
| Total Monthly Rental | | $2,232.46 |

| PAYMENT SCHEDULE | | | | |
|---|---|---|---|---|
| PAYMENTS | START DATE | BASE VALUE | TOTAL TAX | TOTAL RENTAL PAYMENT |
| 1 | 2/8/2018 | *$12,059.00 | $0.00 | $12,059.00 |
| 37 | 3/8/2018 | $2,232.46 | $0.00 | $2,232.46 |
| 1 | 4/8/2021 | ** $31,337.71 | $0.00 | $31,337.71 |

* Includes $9,550.00 advance payment + $2,509.00 2/8/18 rental payment
** Residual payment due at maturity

In addition to the rental payments, New Lessee agrees to immediately pay and assume all obligation for late charges $0.00 and title fees charge of $39.00 currently due under said Equipment Lease Agreement and a lease transfer processing fee of $450.00 for a total amount due at time of transfer of $489.00.

This Lease Transfer of Interest may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. A photocopy or electronic signed copy of any such counterpart shall have the same force and effect as an original (ink) signature.

| LESSOR CONSENTS: We hereby consent to the assignment of the Lessee's interest in the Lease to the New Lessee, subject to the conditions stated herein and to the terms of the Lease. | New Lessee acknowledges that he/she has received a true copy of the Lease, applicable attachments, and Lease Transfer of Interest, that New Lessee has read these documents and that they were completely filled in. |
|---|---|
| LESSOR: PACCAR Financial Corp. | NEW LESSEE: Ryan Hinton, Inc. |
| BY: _(signature)_ Barbara Coccia, Area Administration Manager | BY: _(signature)_ Robert Ryan Hinton, President |
| DATE: 02/2/2018 | DATE: 02/2/2018 |

**TOTAL DUE AT SIGNING: $12,548.00**

Page 1 of 1

CAT. NO. 1877 LDM (11/2017)

SCHEDULE A DATED: 4/8/2016
LESSEE: Fields Trucking LLC

1682



**PACCAR FINANCIAL**

**CASUALTY AND
TERMINATION SCHEDULE**

This Casualty and Termination Schedule is made a part of the Equipment Lease Agreement dated April 8, 2016 between PACCAR Financial Corp. ("Lessor") and Ryan Hinton, Inc.  ("Lessee").     Termination values assume that all rental payments, fees, and other payments due under the agreement are paid. The table below reflects the percentage of original cost for casualty or termination at each rental month.

Lessor manages certain of its assets through a like-kind exchange program. In connection therewith, notice is hereby given that the rights, but not the obligations, of Lessor to purchase and sell the assets contained herein have been assigned to PFC Exchange, LLC pursuant to an agreement between Lessor and PFC Exchange, LLC.

| Period | Date | Percentage | Period | Date | Percentage | Period | Date | Percentage |
|---|---|---|---|---|---|---|---|---|
| 1 | 5/8/16 | 101.85 | 41 | 9/8/19 | 48.90 | | | |
| 2 | 6/8/16 | 101.01 | 42 | 10/8/19 | 47.48 | | | |
| 3 | 7/8/16 | 100.13 | 43 | 11/8/19 | 46.05 | | | |
| 4 | 8/8/16 | 99.24 | 44 | 12/8/19 | 44.61 | | | |
| 5 | 9/8/16 | 98.33 | 45 | 1/8/20 | 43.15 | | | |
| 6 | 10/8/16 | 97.40 | 46 | 2/8/20 | 41.69 | | | |
| 7 | 11/8/16 | 96.45 | 47 | 3/8/20 | 40.20 | | | |
| 8 | 12/8/16 | 95.48 | 48 | 4/8/20 | 38.70 | | | |
| 9 | 1/8/17 | 94.48 | 49 | 5/8/20 | 37.20 | | | |
| 10 | 2/8/17 | 93.47 | 50 | 6/8/20 | 35.69 | | | |
| 11 | 3/8/17 | 92.44 | 51 | 7/8/20 | 34.18 | | | |
| 12 | 4/8/17 | 91.40 | 52 | 8/8/20 | 32.64 | | | |
| 13 | 5/8/17 | 90.32 | 53 | 9/8/20 | 31.10 | | | |
| 14 | 6/8/17 | 89.22 | 54 | 10/8/20 | 29.55 | | | |
| 15 | 7/8/17 | 88.09 | 55 | 11/8/20 | 27.99 | | | |
| 16 | 8/8/17 | 86.94 | 56 | 12/8/20 | 26.42 | | | |
| 17 | 9/8/17 | 85.77 | 57 | 1/8/21 | 24.84 | | | |
| 18 | 10/8/17 | 84.57 | 58 | 2/8/21 | 23.24 | | | |
| 19 | 11/8/17 | 83.35 | 59 | 3/8/21 | 21.63 | | | |
| 20 | 12/8/17 | 82.11 | 60 | 4/8/21 | 20.00 | | | |
| 21 | 1/8/18 | 80.84 | | | | | | |
| 22 | 2/8/18 | 79.54 | | | | | | |
| 23 | 3/8/18 | 72.39 | | | | | | |
| 24 | 4/8/18 | 71.18 | | | | | | |
| 25 | 5/8/18 | 69.97 | | | | | | |
| 26 | 6/8/18 | 68.74 | | | | | | |
| 27 | 7/8/18 | 67.50 | | | | | | |
| 28 | 8/8/18 | 66.25 | | | | | | |
| 29 | 9/8/18 | 64.99 | | | | | | |
| 30 | 10/8/18 | 63.72 | | | | | | |
| 31 | 11/8/18 | 62.43 | | | | | | |
| 32 | 12/8/18 | 61.13 | | | | | | |
| 33 | 1/8/19 | 59.82 | | | | | | |
| 34 | 2/8/19 | 58.50 | | | | | | |
| 35 | 3/8/19 | 57.16 | | | | | | |
| 36 | 4/8/19 | 55.81 | | | | | | |
| 37 | 5/8/19 | 54.45 | | | | | | |
| 38 | 6/8/19 | 53.08 | | | | | | |
| 39 | 7/8/19 | 51.70 | | | | | | |
| 40 | 8/8/19 | 50.31 | | | | | | |

| LESSOR: PACCAR Financial Corp. | LESSEE: Ryan Hinton, Inc. |
|---|---|
| BY: | BY: ✓ |
| Barbara Coccia | Robert Ryan Hinton |
| TITLE: Area Administration Manager | TITLE: President |
| DATE: February 2, 2018 | DATE: February 2, 2018 |

CAT. NO. 4144 LDM (5/2015)


**PACCAR FINANCIAL**                                        **SALES/USE TAX EXEMPTION CERTIFICATION**

Exemption Certificate – Sales/Use Tax is made a part of the Equipment Lease Agreement dated April 8, 2016 between PACCAR    Financial Corp. or assigns ("Lessor") and Ryan Hinton, Inc. ("Lessee").

I certify:

- that Lessee is engaged in Exempt organization
- that Lessee is registered with the following states, counties or cities.

| State, County or City | Registration or Identification Number |
|---|---|
| Idaho | NA |
| Twin Falls | NA |
| Twin Falls | NA |

- that the Lease and the operation of the vehicle(s) is entitled to exemption under applicable taxing authorities and state provisions.
- that, if claiming exemption the Lessee will keep or cause to be kept and made available to Lessor any and all necessary records relevant to the use of the equipment and pertaining to the aforesaid taxes and claim of exemption.
- that if the vehicle(s) leased free of sales/use tax is used by Lessee so as to make it subject to a sales or use tax in any jurisdiction (not limited to those listed above), Lessee will pay the tax due plus any interest and penalties, direct to the proper taxing authority when state law so provides and/or inform Lessor for added tax billing. Lessee will reimburse Lessor for sales or use taxes assessed against Lessor by reason of such use.
- this Certificate shall be part of each Lease which Lessee may hereafter enter into with Lessor covering the below listed equipment.
- that this Exemption Certificate shall not limit or otherwise restrict the obligations of Lessee under the Equipment Lease Agreement and its attachments and amendments and all documents shall remain in full force and effect unchanged.
- that Lessee will promptly notify Lessor in the event of any changes in the status of the operations or location of the business or vehicle(s).
- that this certificate covers the following equipment:

| DESCRIPTION OF EQUIPMENT | | | |
|---|---|---|---|
| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
| 2016 | Kenworth | W900 | 1XKWD49X8GJ103312 |

I swear and affirm that the information on this form is true and correct as to every matter.

| LESSEE: Ryan Hinton, Inc. |
|---|
| BY: _Robert Ryan Hinton_ ✓ |
| Robert Ryan Hinton |
| TITLE: President |
| DATE: February 2, 2018 |

CAT. NO. 7481 LDM

**ST-104-MV**    **Idaho State Tax Commission**
**SALES TAX EXEMPTION CERTIFICATE - VEHICLE/VESSEL**
*The buyer must complete this form and give it to the seller when claiming a tax exemption.*

| Buyer's Name | | | | Seller's Name | | | |
|---|---|---|---|---|---|---|---|
| Ryan Hinton, Inc. | | | | Kenworth Sales Co | | | |
| Address | | City | State | Address | | City | State |
| 1399 Fillmore St Suite 502 | | Twin Falls | ID | 322 E Frontage Rd | | Jerome | ID |
| Zip Code | Phone | | | Zip Code | Phone | | |
| 83301 | 208-733-2928 | | | 83338 | 208-324-8886 | | |
| Vehicle/Vessel INFORMATION | Year 2018 | Make Kenworth | | Model W900 | Hull or Vehicle Identification Number 1XKWD49X8GJ103312 | | |

### OUT-OF-STATE EXEMPTION FOR NONRESIDENTS

The purchase or lease of this vehicle or vessel is exempt from sales tax because:

1. This vehicle is:
   - [ ] an automobile
   - [ ] an on-highway motorcycle
   - [ ] a truck
   - [ ] a trailer*
   - [ ] a snowmobile
   - [ ] a vessel with motor regardless of length
   - [ ] a vessel without a motor, 11 feet or more in length*
   - [ ] an ATV
   - [ ] an off-highway motorcycle, and

2. I am not an Idaho resident and during any 12-month period, I will limit the storage or use of this vehicle/vessel in Idaho to 60 days or less, and
3. I will take this vehicle to the state or country of _____ and will immediately license and title it there, if required, and
4. My driver's license number is _____, issued by (state or country) _____.

*This exemption doesn't apply to SOHVs, UTVs, canoes, kayaks, truck campers, or inflatable boats (of any length) sold without a motor.

ORIGINAL - Idaho State Tax Commission, Tax Discovery Bureau, Box 36, Boise, Idaho 83722
COPY - Seller

### INTERSTATE CARRIER EXEMPTION

The purchase or lease of this motor vehicle or trailer is exempt from sales tax because:

[✓] **Truck or Bus**
1. This motor vehicle will be immediately registered with a maximum gross weight of more than 26,000 pounds under the International Registration Program (IRP), and
2. This vehicle will be part of a registered fleet of vehicles which will operate __70_% of its miles outside of Idaho, and
3. I understand that if the out-of-Idaho fleet mileage* drops below 10% for any registration year, I must pay use tax to the Tax Commission on the fair market value of this motor vehicle as of the last day of the registration period.

[ ] **Trailer**
1. This on-highway trailer will immediately become part of a fleet of vehicles registered under the International Registration Program (IRP), and
2. This fleet of vehicles will operate _____% of its miles outside of Idaho, and
3. I understand that if the out-of-Idaho fleet mileage* drops below 10% for any registration year, I must pay use tax to the Tax Commission on the fair market value of this trailer as of the last day of the registration period.

*An operator may have more than one IRP fleet. Each fleet is evaluated separately for compliance with the out-of-state mileage requirement.

ORIGINAL - County Assessor/Idaho Transportation Department
COPY - Seller

| I certify that all statements I have made on this form are true and correct to the best of my knowledge. I understand that falsifying this certificate to evade paying tax is a misdemeanor. Other penalties may also apply. | |
|---|---|
| SIGN HERE >> Buyer's Signature *[signature]* | Date 2/2/2018 |

**NOTE TO SELLER**

Rule 128 states that if you don't receive an exemption certificate from the buyer at the time of sale, the sale is presumed to be taxable. If you receive an exemption certificate after the sale, but don't get it within a reasonable length of time, the Tax Commission will review the certificate with all other available evidence to determine whether you have clearly proven that the sale was exempt from tax.

- *This form is valid only if all the information is complete.*  •  *The seller must keep this form.*  •  *This form may be reproduced.*

EFO00118
06-16-13


**PACCAR**
**FINANCIAL**

**LEASE GUARANTY**

Reference is made to the Equipment Lease Agreement ("Agreement") dated April 8, 2016 between PACCAR Financial Corp.    ("Lessor") and Ryan Hinton, Inc. ("Lessee").

In order to induce Lessor to enter into the Agreement, and for other valuable consideration the receipt and sufficiency of which is hereby acknowledged, Guarantor (and if more than one, each of the undersigned Guarantors jointly and severally) hereby unconditionally and irrevocably guarantees to Lessor and its assigns that, regardless of the enforceability of the Agreement or of any other circumstance which might affect the liability of Lessee or of Guarantor: (i) all of Lessee's payment and other obligations under the Agreement ("Obligations") will be performed or paid in full in accordance with the terms of the Agreement, and (ii) in case of any extension of time of payment or other change, amendment or modification of the Obligations, they will be performed or paid in full in accordance with the terms of such extension, change, amendment or modification. In the event that any of the Obligations are not performed or paid in full when due for whatever reason, including Lessee's bankruptcy, insolvency or receivership or a discharge or release of the Obligations in a bankruptcy or other judicial proceeding, Guarantor will pay such amount immediately upon notice from Lessor, regardless of whether Lessor has proceeded against Lessee or the Equipment (as defined in the Agreement). Guarantor hereby waives notice of and consents to any and all changes, amendments, modifications, extensions of time of payment, renewals, releases of Equipment or any other indulgency from time to time granted to Lessee in respect of any or all of the Obligations, none of which actions shall affect or impair Guarantor's obligations hereunder. Guarantor hereby waives notice of acceptance, notice of presentment, demand of payment, notice of protest, notice of sale or other disposition and notice of release or other handling of the Equipment, and all other notices and demands whatsoever respecting the Obligations or the Equipment. Guarantor is and shall keep informed of Lessee's financial condition, the status of any guarantors or any security for the obligations of Lessee arising under the Agreement and all other circumstances bearing upon the risk of nonpayment of such obligations.

This Guaranty shall bind the Guarantor and the Guarantor's heirs, successors and assigns. This Guaranty shall be automatically reinstated if for any reason any payment or performance in respect of the Obligations shall be rescinded or must otherwise be restored or returned, whether as a result of proceedings in bankruptcy or otherwise. Any of the undersigned Guarantors, if more than one, and any other party liable in respect of the Obligations may be released without affecting the liability of any undersigned Guarantor or Guarantors not so released. Lessor may assign this Guaranty, and if it does, the assignee shall have the same rights and remedies as if originally named herein in place of Lessor. Guarantor hereby irrevocably waives and renounces any right or claim Guarantor would otherwise have against Lessee, whether by way of indemnification, subrogation, exoneration, right of reimbursement, contribution or otherwise, as a consequence of Guarantor making any payment under this Guarantee.

Dated this second day of February, 2018.

| Individual Guarantor | Address | Phone |
|---|---|---|
| _signature_ | | |
| Robert Ryan Hinton | 1399 Fillmore St Ste 502 | |
| | Twin Falls, ID 83301 | |

CAT. NO. 4064b LDM (5/2017)

Account Number: 900-693-600-00006721682

# PACCAR
# FINANCIAL

## PAYMENT OPTION ADDENDUM

Check **one** of the following:

[X] Yes, I want to access PACCAR Financial Online Services to make payments online.
(You will receive an email welcome letter with instructions on how to sign up.)

Email Address: _ryAn hinTon INC @ gmail.com_

[ ] I am an existing PACCAR Financial Online Services customer, currently making payments online.

Email Address: _____

[ ] No, I do not want to access PACCAR Financial Online Services. I prefer to receive a Coupon Book and understand that I will be subject to a one-time, non-refundable Administration Fee of $250.00 for choosing this option.

Reason: _____

By signing below, I understand that if payments are not made through PACCAR Financial Online Services, I am subject to a one-time, non-refundable Administration Fee of $250.00 to be added to my account.

| SELLER: PACCAR Financial Corp. | BUYER: Ryan Hinton, Inc |
|---|---|
| BY: | BY: |
| NAME: Barbara Coccia | NAME: Robert Ryan Hinton |
| TITLE: Area Administration Manager | TITLE: President |
| DATE: 2/2/2018 | DATE: 2/2/2018 |

CAT. NO. 1022 DLD (2/2012)                    Page 1 of 1